IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| Carl A. Mack,<br>     Petitioner, | )<br>)<br>) |
| v. | )   1:10cv1188 (CMH/IDD) |
| Patricia R. Stansberry,<br>     Respondent. | )<br>)<br>)<br>) |

MEMORANDUM OPINION

Carl A. Mack, a federal inmate housed in the Eastern District of Virginia and proceeding pro se, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging the calculation of his sentence by the Bureau of Prisons ("BOP"). Respondent has filed motions to dismiss the petition and alternatively for summary judgment, with a supporting memorandum and exhibits. Petitioner was given the opportunity to file responsive materials, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), and he filed a traverse. Respondent thereafter filed a reply memorandum of law. For the reasons that follow, respondent's motion for summary judgment must be granted, and summary final judgment will be entered in her favor. Respondent's motion to dismiss will be denied as moot.

**I. Background**

The following material facts are uncontroverted. On March 22, 2005, a complaint charging Mack with fraud was filed in the United States District Court for the Northern District of Illinois. Resp. Ex. 1. Mack was arrested a week later and released on bond the same day. Resp. Ex. 2. On April 19, 2005, Mack was indicted on this federal fraud charge. Resp. Ex. 3. When Mack violated

the conditions of his bond, the bond was revoked on June 6, 2005, and Mack was returned to federal custody. Resp. Ex. 2. On August 4, 2005, the Court granted Mack's emergency motion for temporary release on bond, and Mack was ordered to return to custody on August 12, 2005. On August 11, Mack's surrender date was extended to September 2, and on September 2, the Court allowed Mack to remain on bond pending disposition of the fraud charge with the condition of home monitoring. Resp. Ex. 2, 4.

On January 8, 2006, Mack was arrested by the Chicago Police Department for deception. Mack was released, and subsequently was sentenced to two days' incarceration on the charge. Resp. Ex. 5.

On January 14, 2006, Mack was arrested for speeding and driving on a suspended or revoked license by the Hanover Park Police Department. He was released on bond the same day. Resp. Ex. 5.

On June 29, 2006, Mack was arrested for theft by the Chicago Police Department, and was placed in state custody. Resp. Ex. 5. Between September, 2006 and March, 2007, while in state custody, Mack appeared in federal court on four occasions pursuant to writs of habeas corpora *ad prosequendum*. Each time, Mack was returned to state custody following his court appearance. Resp. Ex. 6.

On March 16, 2007, Mack was convicted on the federal fraud charge, and he received a sentence of 78 months imprisonment followed by three years supervised release. The judgment was silent as to any relationship between the federal sentence and any Illinois state sentences Mack was facing. Resp. Ex. 7. Following imposition of the federal sentence, Mack was returned to state custody, and the federal judgment was lodged as a detainer. Resp. Ex. 7, 11.

On May 1, 2007, the Court for Cook County, Illinois sentenced Mack to three years imprisonment after he was convicted of the state theft charge, and he was committed to the Illinois Department of Corrections. Mack received 242 days credit on this state sentence for time he had already served in state custody. Resp. Ex. 5, 8. The Illinois Department of Corrections released Mack on parole from this sentence on August 27, 2006, and the United States Marshals Service took him into custody pursuant to the detainer. Resp. Ex. 2, 8. Mack thus began the service of his 78-month federal sentence on August 26, 2007. Mack received credit against his sentence for the following time served: (1) the date he was arrested on the federal fraud charge, March 29, 2005 (1 day); (2) the time he spent in federal custody when the federal fraud charge was pending and bond was revoked, June 6 though August 4, 2005 (60 days); and (3) the date he was arrested for driving violations by the Hanover Park Police, January 14, 2006 (1 day). Mack did not receive credit against his federal sentence for: (1) the date he was arrested for deception by the Chicago Police Department, January 8, 2006 (1 day); or (2) the time he spent in state custody for the theft conviction, June 29, 2006 through August 26, 2007 (approximately 14 months), during which period Mack made his four federal court appearances pursuant to the *ad prosequendum* writs. Resp. Ex. 9. Mack's current projected release date is May 2, 2012. Id.

On April 3, 2009, Mack submitted a complaint for informal resolution, claiming that he had not received "jail time credit from the time [he] was sentenced." The BOP responded that the complaint could not be informally resolved because Mack was requesting federal credit for a state sentence. Pet., Ex. 1 at 11. On November 8, 2009, Mack submitted an appeal, claiming that he was entitled to 14 months credit of his federal sentence for the time between June 29, 2006, when he was taken into federal custody, and August 29, 2007. Id. at 15. Because Mack was primarily in state

3

custody during that period, the BOP interpreted his appeal as a request for *nunc pro tunc* designation for his state theft sentence to count toward his federal fraud sentence.¹ The BOP determined that Mack was eligible for a <u>Barden</u> review, <u>see</u> n. 1, and contacted Mack's sentencing court for its position regarding a concurrent designation. Resp. Ex. 10 -12. When no response was received from the sentencing court within sixty (60) days, the BOP determined based on the factors enumerated at 18 U.S.C. § 3621(b) that a concurrent designation was not appropriate in Mack's case.² Resp. Ex. 12. Specifically, the BOP denied a concurrent designation in Mack's case based on factor 2, because the loss resulting from Mack's fraud exceeded $ 500,000; factor 3, because Mack had a history of similar crimes and was a management problem while in custody; and factor 4, because the court

---

¹In <u>Barden v. Keohane</u>, 921 F.2d 476, 478 (3d Cir. 1991), where a federal prisoner sought a writ of habeas corpus after the BOP failed to consider his request to designate a state prison as his place of confinement for purposes of determining his entitlement to credit against his federal sentence for time he spent in state custody, the Third Circuit held that "federal authorities have an obligation ... to look at Barden's case and exercise the discretion the applicable statute grants the [BOP] to decide whether the state prison in which he served his sentence should be designated as a place of federal confinement *nunc pro tunc*." A *nunc pro tunc* designation seeks to have the BOP designate a prisoner's prior facility of state custody as the place of federal custody for purposes of a federal sentence. The result is that time served in state custody is credited against the time the inmate must serve on a federal sentence, in effect causing the state and federal sentences to run concurrently. See <u>Trowell v. Beeler</u>, 135 Fed. Appx. 590, 593 (4th Cir. 2005).

²Section 3621(b) provides that the BOP shall designate the place of a prisoner's imprisonment, and may designate any facility that meets minimum standards and that the BOP determines is "appropriate and suitable, considering -

    (1) the resources of the facility contemplated;
    (2) the nature and circumstances of the offense;
    (3) the history and characteristics of the prisoner;
    (4) any statement by the court that imposed the sentence —
        (A) concerning the purposes for which the sentence to imprisonment
        was determined to be warranted; or
        (B) recommending a type of penal or correctional facility as appropriate; and
    (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28."

expressed no opinion on a possible concurrent designation. Resp. Ex. 12. Mack was informed that his *nunc pro tunc* request and appeal had been denied in a letter dated April 5, 2010. Pet., Ex. 1 at 16. Mack subsequently submitted another complaint for informal resolution at his current institution of confinement, which was denied as repetitive. Pet., Ex. 1 at 12 - 13.

Mack then turned to the federal forum and filed the instant petition for habeas corpus relief under § 2241, requesting that this Court "[e]nter an Order directing the BOP to grant [him] credit for time spent in jail which meets the description of 'official detention.'" Pet. at 8. Exhibits supplied by the respondent indicate that Mack has exhausted available administrative remedies as to his claim.[3] Accordingly, this matter is now ripe for review on the merits.

## II. Standard of Review

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to

---

[3] In the context of federal habeas petitions challenging sentence computations, parole determinations, or good time credits calculations, courts have required petitioners first to exhaust their administrative remedies. See United States v. Wilson, 503 U.S. 329, 335-36 (1992) (holding that Congressional changes to 18 U.S.C. § 3568 did not divest the Federal Bureau of Prisons ("BOP") of the authority to compute federal prisoners' sentences and noting that federal prisoners may seek judicial review of these computations after exhaustion of their administrative remedies); United States v. Bayless, 940 F.2d 300, 304-305 (8th Cir. 1991) (refusing to reach petitioner's challenge to computation of his sentence because petitioner had failed to exhaust his administrative remedies with the BOP); United States v. Lucas, 898 F.2d 1554, 1555-56 (11th Cir. 1990) (holding that a dissatisfied prisoner may only avail himself of judicial review after an adverse administrative decision by the BOP regarding his sentence calculation); United States v. Woods, 888 F.2d 653, 654 (10th Cir. 1989) (concluding that because the BOP has the initial discretion to credit a prison term with time spent in custody before commencement of the sentence, a defendant must exhaust his administrative remedies before seeking judicial review). Although the Fourth Circuit has yet to provide binding authority addressing this issue, it has required exhaustion in several unpublished opinions: Crosson v. South Carolina, No. 93-6720, 1994 WL 12032, at *1 (4th Cir. Jan. 20, 1994) (holding that a petitioner "must exhaust administrative remedies before bringing a § 2241 action" challenging denial of parole); United States v. Bailey, No. 92-5592, 1991 WL 359485, at *1 (4th Cir. Sept. 16, 1993) (noting that the challenged sentence computation was properly under the BOP's authority, and concluding that "[o]nly after prisoners have exhausted the administrative remedies available to them through the [BOP] can they seek judicial review").

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[4] Fed. R. Civ. P. 56. The moving party bears the burden of proving that judgment on the pleadings is appropriate. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (moving party bears the burden of persuasion on all relevant issues). To meet that burden, the moving party must demonstrate that no genuine issues of material fact are present for resolution. Id. at 322. Once a moving party has met its burden to show that it is entitled to judgment as a matter of law, the burden then shifts to the non-moving party to point out the specific facts which create disputed factual issues. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Those facts which the moving party bears the burden of proving are facts which are material. "[T]he substantive law will identify which facts are material. Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. An issue of material fact is genuine when, "the evidence ... create[s] [a] fair doubt; wholly speculative assertions will not suffice." Ross v.

---

[4] Respondent explains that she moved both for dismissal of Mack's petition and alternatively for summary judgment because it remains unsettled in the applicable case law whether the limitations on federal courts' ability to review BOP decisions on *nunc pro* tunc designations are jurisdictional in nature. If they are, materials outside the pleadings can be reviewed on a motion to dismiss, without transforming the motion into one for summary judgment. Sec'y of State v. Trimble Navigation Ltd., 484 F.3d 700, 705 (4th Cir. 2007). Here, however, as the question remains open, respondent's arguments and exhibits will be reviewed under the more rigorous standard for summary judgment in an abundance of caution.

Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985). Thus, summary judgment is appropriate only where no material facts are genuinely disputed and the evidence as a whole could not lead a rational fact finder to rule for the non-moving party. Matsushita, 475 U.S. at 587.

### III. Analysis

As respondent points out, Mack's claim in this proceeding is not expressed with clarity or precision, and it is unclear exactly what time he seeks to have credited against his federal sentence. Resp. at 7, n. 7. Read most broadly, Mack's petition may be interpreted as requesting *nunc pro tunc* designation from June 29, 2006 through August 26, 2007, the entire period Mack was in state custody as the result of the Illinois theft conviction. During that period, as described above, Mack was brought into federal custody four times on writs, and his petition arguably may seek credit for those days, or for the time he remained in state custody after his federal sentence was imposed. Regardless, respondent is entitled to the summary judgment she seeks because, as other courts in this division have held in considering indistinguishable facts, Mack is entitled to no additional credit under any of those circumstances. See Alls v. Stansberry, 2010 WL 723034 (E.D. Va. Mar. 1, 2010) (Brinkema, J.), aff'd, 396 Fed. App'x 932 (4th Cir. 2010); Nale v. Stansberry, 2009 WL 1321507 (E.D. Va., May 11, 2009) (O'Grady, J.).

The principal question raised by this petition is whether the BOP abused its discretion in deciding not to credit Mack's federal sentence with the time he spent in state custody prior to the imposition of the federal sentence. It is well established that after a district court imposes a sentence, the Attorney General, through the BOP, is responsible for administering the sentence. Wilson, 503 U.S. at 335. The authority to determine when a federal sentence commences is uniquely the BOP's, United States v. Hayes, 535 F.3d 907, 910 (8th Cir. 2008), cert. denied, 129 S.Ct. 1983 (2009), and

in this case the BOP concluded that Mack's federal sentence commenced on August 26, 2007, when Illinois authorities relinquished control of Mack and placed him in the custody of the United States Marshals Service.[5] This decision was fully consistent with federal law, which holds that "[a] sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." 18 U.S.C. §3583(a).

Pursuant to 18 U.S.C. § 3621(b), the BOP has the authority to designate the facility at which a prisoner is to serve a federal sentence, and in this regard it has "wide discretion." Barden, 921 F.2d at 476. While it is within the BOP's discretion to designate a state facility where an inmate previously served a state sentence as the place of his federal incarceration *nunc pro tunc*, there is no requirement that it must grant such a request. Id. at 483. Federal habeas review of the BOP's decision in such an instance is highly deferential, Taylor v. Sawyer, 284 F.3d 1143, 1149 (9th Cir. 2002), and once the BOP has considered the request, judicial consideration is limited to whether an abuse of discretion occurred. Barden, 921 F.2d at 478. So long as the BOP undertakes an individualized review of an inmate's case and makes a decision to deny a request for designation *nunc pro tunc* after analyzing the five relevant factors prescribed by § 3621, habeas corpus relief from its determination is unavailable. Nale, 2009 WL 1321507 at *5.

Here, pursuant to § 3621(b), the BOP could have designated the Illinois institution where Mack served his state sentence for theft as the place of his federal incarceration *nunc pro tunc*, such

---

[5]In his traverse (Docket # 12), Mack contends that the period from June 29, 2006 until August 26, 2007 should be credited against his current sentence because he was then in federal custody. In this, he is simply mistaken, as he remained in state custody during that entire time. Contrary to Mack's stated belief, his arrest on June 29, 2006 was not pursuant to a federal warrant, but rather was based on state theft charges. Resp. Ex. 5, 8.

that the two sentences would have run concurrently. However, there is no authority which compelled it to grant such a request. Instead, under Barden, the BOP was obligated only to consider the request pursuant to the five factors required under § 3621, and the record is clear that it did so in Mack's case. Accordingly, no abuse of the BOP's discretion has been shown, and habeas corpus relief from its decision to deny Mack *nunc pro tunc* designation is unavailable. Nale, 2009 WL 1321507 at *5; cf. Trowell, 135 Fed. App'x at 595-96 (holding that the BOP abused its discretion when it considered only one of the five § 3621 factors).

To the extent that Mack may intend to argue that he should have received credit against his federal sentence for the four instances when he appeared in federal court between September, 2006 and March, 2007 pursuant to writs of habeas corpora *ad prosequendum*, his argument fares no better. During the period in question, Mack was in the primary custody of Illinois officials; his federal custody did not commence until August 26, 2007. A federal sentence does not begin to run when a state prisoner is produced for prosecution in state court pursuant to a writ of habeas corpus *ad prosequendum*. Instead, the state retains primary jurisdiction over the inmate, and federal custody commences only when he is relinquished by state authorities upon satisfaction of his state obligation. United States v. Evans, 159 F.3d 908, 912 (4th Cir. 1998).

If Mack intends to argue that his federal sentence should be deemed to have commenced on March 16, 2007, the date of his federal sentencing, instead of the date he was taken into federal custody, his position is unavailing. Pursuant to 18 U.S.C. § 3585(b), prior custody credit is to be awarded against a federal sentence only when it has not been credited against another sentence. Thus, "Congress made it clear that a defendant should not receive a double credit for his detention time." Wilson, 503 U.S. at 337. Here, all of the time Mack spent in custody between his federal sentencing

on March 16, 2007 and his arrival into federal custody on August 27, 2007 was credited to his Illinois sentence. Resp. Ex. 5, 8. Accordingly, Mack received all of the credit for that period to which he is entitled.

Lastly, in his traverse, Mack argues that he is entitled to receive credit for time he spent in "official detention" prior to the date his federal sentence actually commenced. However, Mack's interpretation of the meaning of "official detention" appears flawed. "For the purpose of calculating credit for time served under 18 U.S.C. § 3585, 'official detention' means imprisonment in a place of confinement, not stipulations or conditions imposed upon a person not subject to full physical incarceration." United States v. Insley, 927 F.2d 185, 186 (4th Cir. 1991). Mack's belief that he is entitled to credit for the time he was released on bond on federal charges thus is incorrect. Moreover, Mack's stated opinion that he is "entitled" to receive credit for the time spent in official detention prior to the date a sentence commences likewise is inaccurate because, as discussed above, a federal inmate is entitled to credit for time spent in official detention in state custody only if the BOP, in its discretion, elects to designate a state facility as the inmate's place of federal incarceration *nunc pro tunc*. Barden, 921 F.2d at 483. That did not occur in Mack's case, and as no showing has been made that the BOP abused its discretion in arriving at its decision. the habeas corpus relief Mack seeks is unavailable to him. Accordingly, as no material facts are genuinely disputed and the evidence as a whole could not lead a rational finder of fact to rule for the petitioner in this case, respondent is entitled to the summary judgment she seeks. Matsushita, 475 U.S. at 587.

### IV. Conclusion

For the foregoing reasons, respondent's motion for summary judgment will be granted, and summary final judgment will be entered in her favor. Respondent's motion to dismiss will be denied,

as moot. An appropriate Order shall issue.

Entered this 29th day of July 2011.

/s/
Claude M. Hilton
United States District Judge

Alexandria, Virginia